### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IVORY HARRIS,<br>an individual, | * * * | |
| Plaintiff, | * * | Case No. 1:26-cv-3375 |
| v. | * * | |
| TIME EQUITIES, INC.,<br>a New York corporation, | * * * | |
| JK EQUITIES, LLC,<br>a New York limited liability company, | * * * | |
| OAK CAPITALS, LLC,<br>an Illinois limited liability company, | * * * | |
| JAHN, LLC,<br>an Illinois limited liability company, | * * * | |
| MCHUGH DEVELOPMENT &<br>CONSTRUCTION, INCORPORATED,<br>an Illinois corporation, | * * * * | |
| Defendants. | * * * | |

### COMPLAINT

Comes now Plaintiff, IVORY HARRIS ("Plaintiff"), by and through counsel, and alleges as follows:

### I.
### INTRODUCTION

1. Plaintiff brings this action against Defendants, TIME EQUITIES, INC., JK EQUITIES, LLC, OAK CAPITALS, LLC, JAHN, LLC, and MCHUGH DEVELOPMENT & CONSTRUCTION, INCORPORATED, ("Defendants"), alleging violations of the Fair Housing

1

Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 (FHA), 42 U.S.C. §§ 3601-3619 with regard to lack of accessibility at the 1000M apartments (the "Property").

2.      Plaintiff seeks monetary, declaratory and injunctive relief arising from violations of the accessibility requirements of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 (FHA), 42 U.S.C. § 3601-3619. This statute requires that certain apartment complexes built for first occupancy after March 13, 1991 be designed and constructed with accessible and usable features for people with disabilities.

3.      Plaintiff, IVORY HARRIS, is a handicapped individual who uses a wheelchair. Plaintiff brings this civil rights action against Defendants for failing to design and/or construct apartments with accessible and usable features for people with disabilities as required by the FHA. Defendants' apartment complex, 1000M, which is a multi-family dwelling, has numerous barriers to access. Therefore, Plaintiff seeks a declaration that Defendants' apartment complex violates federal law and an injunction requiring Defendants to comply with the requirements of the FHA.

4.      The Defendants' violations of the FHA have thwarted Congressional efforts to eradicate housing discrimination against people with disabilities and rendered units and/or facilities unavailable to people with disabilities. Enforcement of the FHA against Defendants is necessary because of the extensive nature of the civil rights violations at apartments designed, constructed and/or owned by Defendants.

## II.
## JURISDICTION AND VENUE

5.      This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. § § 3613(a). Plaintiff asserts no state law claims.

2

6.     Plaintiff's claims asserted herein arose in this judicial district and Defendants do substantial business in this judicial district.

7.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

### III.
### PARTIES

8.     Plaintiff, IVORY HARRIS, is and, at all times relevant hereto, was a resident of the  State of Illinois. Plaintiff is and, at all times relevant hereto, has been legally  handicapped and is therefore a member of a protected class under the FHA.

9.     Defendant, TIME EQUITIES, INC.,  is  a  New York corporation and a co-developer of the real property and improvements for property municipally known as 1000 S. Michigan Ave., Chicago, IL 60605. Upon information and  belief, Defendant is a co-developer and  participated  in  the  design  and  construction  of  the  Property.

10.     Defendant, JK EQUITIES, LLC, is  a  New York limited liability company and a co-developer of the real property and improvements for property municipally known as 1000 S. Michigan Ave., Chicago, IL 60605. Upon information and  belief, Defendant  is  a  co-developer and  participated  in  the  design  and  construction  of  the  Property.

11.     Defendant, OAK CAPITALS, LLC, is  an  Illinois limited liability company and a co-developer of the real property and improvements for property municipally known as 1000 S. Michigan Ave., Chicago, IL 60605. Upon information and  belief, Defendant  is  a  co-developer and  participated  in  the  design  and  construction  of  the  Property.

12.     Defendant, JAHN, LLC, is an Illinois limited liability company and served as the architect of record and prepared the design documents for the development of the property municipally known as 1000 S. Michigan Ave., Chicago, IL 60605.

3

13. Defendant, MCHUGH DEVELOPMENT & CONSTRUCTION, INCORPORATED, is an Illinois corporation and served as the general contractor and participated in the design and construction for the property municipally known as 1000 S. Michigan Ave., Chicago, IL 60605.

**IV.**
**STATUTORY BACKGROUND**

**A.      The FHA**

14. Congress enacted the FHA design and construction accessibility requirements as part of a comprehensive revision of the FHA to prohibit discrimination on the basis of disability. The debates and legislative history of the FHA reflect Congressional findings that a person using a wheelchair or other mobility aid is just as effectively excluded from the opportunity to live in a particular dwelling by steps or thresholds at building or unit entrances and by too narrow doorways as by a posted sign saying, "No Handicapped People Allowed." In considering the 1988 disability amendments to the FHA, Congress stressed that enforcement of civil rights laws is necessary to protect people with disabilities from the "devastating" impact of housing discrimination, including the "architectural barriers" erected by developers who fail to construct dwellings and public accommodations accessible to and useable by people with disabilities. HR. REP. NO. 100-711, at 25(1988), reprinted in 1988 U.S.C.C.A.N. 2173, 2186.

15. In response to Congressional findings, the FHA mandated that every multi-family apartment building containing four (4) or more units and built for first occupancy after March 13, 1991 ("covered multi-family dwellings") be subject to certain design and construction requirements. Congress specifically rejected the approach of requiring only a specific number or percentage of units be fully accessible. Instead, Congress decided that all covered multifamily dwellings units must comply with the Act's design and construction requirements. All ground floor units must comply with the following requirements, as must all units served by an elevator:

a. Public-use and common-use areas that are readily accessible to, and usable by, people with disabilities;

b. Doors into and within covered units that are sufficiently wide to allow passage by people in wheelchairs;

c. An accessible route into and through the dwelling;

d. Light switches, electrical outlets, thermostats and other environmental controls in accessible locations;

e. Reinforcements in bathroom walls that allow for the later installation of grab bars; and

f. Usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

16. Congress viewed the accessibility requirements imposed by § 3604(f)(3)(C) as "modest." It did not intend to impose "unreasonable requirements" or a "standard of total accessibility," but rather saw the "basic features" required by § 3604(f)(3)(C) as amounting to "minimal standards" that would be "easy to incorporate in housing design and construction." Furthermore, according to the House Report, the § 3604(f)(3)(C) requirements could be met without making new multi-family housing "look unusual" and without "significant additional costs."

17. Pursuant to Congressional authority, the United States Department of Housing and Urban Development ("HUD") promulgated final FHA design and construction regulations in January 1989, see 24 C.F.R § 100.205 (2008), and published the final Fair Housing Act Accessibility Guidelines on March 6, 1991 (hereinafter "FHAAG") which incorporates the requirements of the American National Standards Institute for buildings and facilities providing accessibility and usability for physically handicapped people, A117-I-1986 (hereinafter "ANSI"),

see 56 Fed. Reg. 9472 (Mar. 6, 1991), and the Fair Housing Act Design Manual in August 1996, which was revised in August 1998.

18. Defendants failed to comply with the FHAAG and ANSI in the design and construction of the Property. It also failed to comply with any other recognized objective FHA or ADA standard for accessibility.

19. The FHA expressly provides for private enforcement by an "aggrieved person" defined as a person who claims to have been injured by a discriminatory housing practice or believes that such person will be injured by a discriminatory housing practice. 42 U.S.C. § 3613(i)(1)(A) (private right of action); 42 U.S.C. § 36021. (defining aggrieved person). In fact, the Supreme Court has stated that private enforcement is the primary method of obtaining compliance with the FHA. *Trafficante v. Metropolitan Life Insurance Company*, 409 U.S. 205, 209 (1977).

20. The FHA also provides that a private plaintiff may be awarded actual and punitive damages, as well as a "permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate)." 42 U.S.C. § 3613(c)(1). Thus, under the FHA, the court may order injunctive relief to remediate the discriminatory barriers at the Property.

21. Notably, the Supreme Court has recognized that discrimination violative of the FHA injures not only the members of a protected class, but also other tenants at an apartment complex who are denied the benefits of associating with those persons. *Trafficante*, 409 U.S. at 209-10. Thus, private enforcement benefits not only those against whom discrimination is directed, but the other residents. *Id*. at 211.

## V.
## FACTUAL BACKGROUND

### A.      The Property

22.      The 1000M is an apartment complex located at 1000 S. Michigan Ave. (the "Property"). The Property consists of approximately 738 total units in one building. The apartment complex is served by elevators.

23.      According to the website for 1000M, the Property is a "luxury rental community" consisting of 73 stories. It boasts "80,000 square feet of indoor and outdoor amenities".[1] Additionally, the Chicago Tribune reported that construction and design of the Property cost $470 million. [2]

24.      The Property described above was designed and constructed for first occupancy after May 2024.

25.      The Property contains "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f)(7).

26.      The covered multifamily dwellings at the Property are subject to the requirements of 42 U.S.C. § 3604(f). These include all ground floor units and units served by elevators.

27.      Defendants' failure to design and construct the Property in compliance with Section 3604(f)(3)(C) occurred during the design and construction of the Property and continued until all units were leased.

### B.      Plaintiff's Investigation

28.      Plaintiff was researching apartments in the Chicago area. Plaintiff visited the

---

[1] https://1000mchicago.com/news/1000m-grand-opening/
[2] https://www.chicagotribune.com/2020/07/07/lender-halts-funding-for-helmut-jahn-designed-skyscraper-on-michigan-avenue-putting-project-in-doubt/

Property in March of 2026 and looked at one or more units. Plaintiff observed that there were accessibility barriers that would interfere with his ability to access and use the facilities.

29. Plaintiff was born with cerebral palsy, which results in mobility limitations requiring the use of a wheelchair.

30. During his visit, Plaintiff encountered several barriers and violations of the FHA that caused him frustration and deterred him from renting an apartment at the Property. Plaintiff anticipates that an inspection conducted by his expert will reveal several more barriers and violations in both the common areas and the units.

31. The existence of barriers and the lack of accessible features deterred Plaintiff from renting an apartment at the Property.

32. Specifically, Plaintiff is unable to rent an apartment from Defendants because he would not be able to independently use the features of the unit and/or the common areas.

33. As a result of Defendants' non-compliance with the FHA, Plaintiff, unlike persons without disabilities, cannot independently use the features of the Property.

34. Defendants' apartments lack various mandatory elements required by the FHA to make the apartments accessible and usable for people with disabilities.

35. As a handicapped individual and advocate for same, Plaintiff is concerned whether apartments are accessible and useable for people with disabilities.

36. In addition, the barriers at the Property will interfere with residents associating with disabled persons who encounter the barriers at the Property. Disabled relatives and visitors to tenants will encounter the barriers and be deterred from accessing the Property.

37. Because the barriers at the Property are structural, it is inevitable that disabled persons visiting the Property will encounter them, thereby causing them the very injuries sought to be prevented by the FHA's design and construction requirements. The barriers at the Property

present a continuing and ongoing pattern and practice of discrimination against disabled persons. Such discrimination creates a presumption that injunctive relief to remedy the discrimination is necessary. *United States v. Balistrieri*, 981 F.2d 916, 934 (7th Cir. 1992).

38. Absent injunctive relief to remedy the barriers, they will exist in perpetuity at the Property.

39. Without injunctive relief, Plaintiff and others will continue to be unable to fully access and use the Property in violation of his rights under the FHA. Plaintiff expects to return to the Property once it has been remediated.

40. Plaintiff has been injured by the Defendants' discriminatory practices and failure to design and/or construct apartments that are constructed with accessible and useable features for people with disabilities as required by the FHA. These injuries include experiencing discrimination and being deterred from renting at the Property. These blatant violations effectively communicate that people with disabilities are not welcome in the Property.

41. Plaintiff is currently in the market for an apartment in the area of the subject Property. Plaintiff intends to return to the subject property to pursue a rental of an apartment.

42. Without injunctive relief, Plaintiff and others will continue to be unable to fully access and use the Property in violation of their rights under the FHA.

## C.     FHA Violations

43. The Defendants' violations of 42 U.S.C. § 3604(f)(3)(C) at the Property include, but are not limited to, those outlined below. These allegations represent just some of the evidence of the Defendants' failure to design and construct covered units and the public and common use areas in accord with 42 U.S.C. §3604(f)(3)(C) and are not intended as an exhaustive inventory of such violations. Plaintiff anticipates that an inspection of the Property will identify additional violations.

44.     Defendants have failed to design and/or construct public and common-use areas that are readily accessible to and usable by people with disabilities in compliance with 42 U.S.C. § 3604(f)(3)(C)(i) and 24 C.F.R. §100.205(c)(1) (2008). For example:

a.      Both of the common area pools lacked a wheelchair lift. This deterred Plaintiff from renting a unit at the Property because he would not be able to independently access either of the common area pools without a wheelchair lift due to Defendants' violation of the FHA in the construction and design of the Property. This violation caused Plaintiff to feel stigmatized.  Plaintiff experienced frustration, indignation, and emotional distress. This discriminatory architectural barrier deprives Plaintiff of the same full and equal access that a person who is not wheelchair bound would enjoy.

b.      The light switches and electrical outlets in the common area kitchen were out of reach for Plaintiff. Plaintiff attempted to reach the light switches and electrical outlets and was unable to do so because of Defendants' violation of the FHA in the construction and design of the common area kitchen. This violation caused Plaintiff to feel stigmatized.  Plaintiff experienced frustration, indignation, and emotional distress. This discriminatory architectural barrier deprives Plaintiff of the same full and equal access that a person who is not wheelchair bound would enjoy.  This discriminatory architectural barrier deterred Plaintiff from renting a unit at the Property.

c.      The common area countertops do not provide the minimum knee and toe clearance depth for wheelchair users.  Plaintiff cannot access and use the counters because of Defendants' violation of the FHA in the construction and design of the common area countertops. This violation caused Plaintiff to feel stigmatized.  Plaintiff experienced frustration, indignation, and emotional distress.  This discriminatory

architectural barrier deprives Plaintiff of the same full and equal access that a person who is not wheelchair bound would enjoy. This discriminatory architectural barrier deterred Plaintiff from renting a unit at the Property.

45. Defendants have failed to design and/or construct light switches, electrical outlets, thermostats and other environmental controls in accessible locations in compliance with 42 U.S.C. § 3604 (f)(3)(C)(iii)(II) and 24 C.F.R. § 100.205(c)(3)(ii) (2008). For example:

a. Plaintiff encountered and experienced discrimination in the form of an architectural barrier when the light switches and electrical outlets in the in-unit kitchens were out of reach for Plaintiff. Plaintiff attempted to reach the light switches and electrical outlets and was unable to do so because of Defendants' violation of the FHA in the construction and design of the units. This violation caused Plaintiff to feel stigmatized. Plaintiff experienced frustration, indignation, and emotional distress. This discriminatory architectural barrier deprives Plaintiff of the same full and equal access that a person who is not wheelchair bound would enjoy. This discriminatory architectural barrier deterred Plaintiff from renting a unit at the Property.

46. Defendants have failed to design and/or construct kitchens and bathrooms in compliance with 42 U.S.C. § 3604 (f)(3)(C)(iii)(IV) and 24 C.F.R. § 100.205(c)(3)(ii) (2008). For example:

a. Plaintiff encountered and experienced discrimination in the form of an architectural barrier in the dwelling unit bathrooms. They were too small for Plaintiff to navigate in his wheelchair because they lacked the proper amount of clear floor space. Plaintiff was unable to adequately turn around and use the bathroom space because of Defendants' violation of the FHA in the construction

11

and design of the units. This violation caused Plaintiff to feel stigmatized. Plaintiff experienced frustration, indignation, and emotional distress. This discriminatory architectural barrier deprives Plaintiff of the same full and equal access that a person who is not wheelchair bound would enjoy. This discriminatory architectural barrier deterred Plaintiff from renting a unit at the Property.

b.      Plaintiff encountered and experienced discrimination in the form of an architectural barrier in the dwelling unit bathrooms when he approached the bathroom sink. Plaintiff experienced that there was insufficient room for a centered side approach, and an alternate forward approach was unavailable due to the failure to install removable base cabinets. This violation was caused by Defendants' violation of the FHA in the construction and design of the units. This violation caused Plaintiff to feel stigmatized. Plaintiff experienced frustration, indignation, and emotional distress. This discriminatory architectural barrier deprives Plaintiff of the same full and equal access that a person who is not wheelchair bound would enjoy. This discriminatory architectural barrier deterred Plaintiff from renting a unit at the Property.

c.      Plaintiff encountered and experienced discrimination in the form of an architectural barrier in the dwelling unit bathrooms when the showers lacked a clear opening and requisite clear floor space. Plaintiff was unable to adequately maneuver near the shower because of Defendants' violation of the FHA in the construction and design of the units. This violation caused Plaintiff to feel stigmatized. Plaintiff experienced frustration, indignation, and emotional distress. This discriminatory architectural barrier deprives Plaintiff of the same full and

equal access that a person who is not wheelchair bound would enjoy.  This discriminatory architectural barrier deterred Plaintiff from renting a unit at the Property.

       d.      Plaintiff encountered and experienced discrimination in the form of an architectural barrier in the dwelling unit bathrooms when the vanity cabinets in the in-unit bathrooms lacked knee toe clearance. Plaintiff attempted to access the lavatory sink in the bathrooms, but was unable to because of the lack of knee toe clearance. Defendants improperly designed and constructed the in-unit bathrooms in violation of the FHA, causing there to be a lack of knee toe clearance. This violation caused Plaintiff to feel stigmatized.  Plaintiff experienced frustration, indignation, and emotional distress.  This discriminatory architectural barrier deprives Plaintiff of the same full and equal access that a person who is not wheelchair bound would enjoy.  This discriminatory architectural barrier deterred Plaintiff from renting a unit at the Property.

       e.      Plaintiff encountered and experienced discrimination in the form of an architectural barrier in the dwelling unit bathrooms due to a lack of side and front clearance around the toilet.  Plaintiff was unable to adequately maneuver his wheelchair near the toilet, and vanity, because the Defendants improperly designed and constructed the in-unit bathrooms.  This violation caused Plaintiff to feel stigmatized.  Plaintiff experienced frustration, indignation, and emotional distress. This discriminatory architectural barrier deprives Plaintiff of the same full and equal access that a person who is not wheelchair bound would enjoy.  This discriminatory architectural barrier deterred Plaintiff from renting a unit at the Property.

f.      Plaintiff encountered and experienced discrimination in the form of an architectural barrier in the kitchens.  The kitchen sinks in the in-unit kitchens lacked clear floor space and knee toe clearance due to the failure to install removable base cabinets. Plaintiff attempted to access the sink in the kitchens, but was unable to because of the lack of knee toe clearance. Defendants improperly designed and constructed the in-unit kitchens in violation of the FHA, causing there to be a lack of knee toe clearance. This violation caused Plaintiff to feel stigmatized.  Plaintiff experienced frustration, indignation, and emotional distress. This discriminatory architectural barrier deprives Plaintiff of the same full and equal access that a person who is not wheelchair bound would enjoy.  This discriminatory architectural barrier deterred Plaintiff from renting a unit at the Property.

g.      Plaintiff encountered and experienced discrimination in the form of an architectural barrier in the kitchens because the cabinets in the in-unit kitchens were too high, in violation of the FHA. Plaintiff attempted to reach the kitchen cabinets, but was unable to because Defendants failed to design and construct them in compliance with the FHA. This violation caused Plaintiff to feel stigmatized. Plaintiff experienced frustration, indignation, and emotional distress.  This discriminatory architectural barrier deprives Plaintiff of the same full and equal access that a person who is not wheelchair bound would enjoy.  This discriminatory architectural barrier deterred Plaintiff from renting a unit at the Property.

47.    Further, by failing to provide the accessible and useable features required by 42 U.S.C. § 3604(f)(3)(C) at the Property for people with physical disabilities, including but not

14

limited to those outlined above, Defendants have violated 42 U.S.C. § 3604(f)(1) and/or have discriminated against them in the terms, conditions or privileges of the rental of dwellings in violation of 42 U.S.C. § 3604(f)(2).

48.     Plaintiff was injured by these violations at the Property because he experienced frustration, indignation, and emotional distress.  He was deterred from renting an apartment from the Defendants because he was unable to independently use the features of the units and common areas.

**VI.**
**CAUSE OF ACTION**
**For violation of the FHA, 42 U.S.C. § 3601, et seq.**

49.     The allegations in the preceding paragraphs are incorporated by reference.

50.     The Property contains residential apartment units that are "dwelling[s]" within the meaning of 42 U.S.C. § 3602(b).

51.     Plaintiff has standing to sue as an "aggrieved person" as defined in 42 U.S.C. § 3602(i) which includes any person who (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur.

52.     At the Property, all ground-floor units and upper floor units served by elevators not in townhomes are "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f)(7)(A), were built for first occupancy after March 13, 1991, and are subject to the design and construction requirements set forth in 42 U.S.C. § 3604(f)(3)(C) of the FHA. The public- and common-use areas of the Property are also subject to the design and construction requirements of 42 USC. § 3604(f)(3)(C).

53.     Through the actions and inactions described above, the Defendants have:

        a.      discriminated in the rental of, or otherwise made unavailable or denied,

dwellings to persons because of their disabilities in violation of 42 U.S.C. § 3604(f)(1);

b.    discriminated against persons because of their disabilities in the terms, conditions or privileges of rental of a dwelling, or in the provision of services or facilities in connection with the rental of a dwelling, in violation of 42 U.S.C. § 3604(f)(2); and

c.    failed to design and construct dwellings in compliance with the requirements mandated by 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations, 24 C.F.R. Part 100.205 (2008).

54.    Defendants' discriminatory conduct has damaged Plaintiff.

**VII.**
**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for:

a.    A Declaratory Judgment that at the commencement of this action Defendants were in violation of the specific requirements of the FHA, described above, and the relevant implementing regulations of the FHA;

b.    An injunction, pursuant to 42 U.S.C. § 3613(c)(l), enjoining Defendants, their officers, directors, employees, agents, successors, assigns and all other persons in active concert or participation with any of them, both temporarily during the pendency of this action, and permanently from:

1.    with regard to the Property, failing or refusing to bring the covered dwelling units and the public use and common use areas into compliance with the requirements of 42 U.S.C. § 3604(f)(3)(C), the Americans with Disabilities Act ("ADA") and the applicable regulations; to comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court; and to perform or allow such other acts as may be necessary to effectuate any judgment of this Court against them;

16

failing or refusing to design and construct any covered multifamily dwellings in the future in compliance with 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations; and

2. failing or refusing to design and construct any covered multifamily dwellings in the future in compliance with 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations; and

3. failing or refusing to take such steps as will eliminate, to the fullest extent practicable, the lingering effects of the Defendants' unlawful housing practices.

c. An injunction enjoining Defendants from failing or refusing to permit the survey of any of their covered properties that were designed and/or built by the Defendants and any retrofits ordered by the Court to be made at such Property, to also comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court, and to perform or allow such other acts as may be necessary to effectuate any judgment against the Defendants;

d. Award such damages as would fully compensate Plaintiff for his injuries incurred as a result of the Defendants' discriminatory housing practices and conduct, pursuant to 42 U.S.C. § 3613(c)(1);

e. Award such punitive damages against Defendants as is proper under law, pursuant to 42 U.S.C. § 3613(c)(1);

f. Payment of costs of suit;

g. Payment of reasonable attorneys' fees and expenses, pursuant to 42 U.S.C. § 3613(c)(2), and other principles of law and equity; and

h. The provision of whatever other relief the Court deems just, equitable and

appropriate.

## VIII.
## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

Dated: March 27, 2026.

Respectfully Submitted,

/s/ Ryan D. Johnson
Johnson Law Firm, LLC
6615 Grand Ave., PMB 423
Gurnee, IL 60031
rjohnsonada@gmail.com
(224) 548-0855
Bar No.: 6304561
*Attorney for Plaintiff*

**DEFENDANTS TO BE SERVED:**

TIME EQUITIES, INC.
C/O ROBERT KANTOR, PRESIDENT
55 FIFTH AVENUE, 15TH FLOOR
NEW YORK, NY 10003

JK EQUITIES, LLC
C/O JERRY KARLIK, PRINCIPAL
2 SEAVIEW BOULVEARD, SUITE 203
PORT WASHINGTON, NY 11050

OAK CAPITALS, LLC
C/O ELIAS ABUBEKER
1250 S. MICHIGAN AVE., APT 1902
CHICAGO, IL 60605-3272

JAHN, LLC
C/O ROBERT DANKO
410 N. MICHIGAN AVE., STE 600
CHICAGO, IL 60611-4203

MCHUGH DEVELOPMENT & CONSTRUCTION, INCORPORATED
C/O PAUL L. MCHUGH
202 W. HILL ST., APT 505
CHICAGO, IL 60610-2535